**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

| | |
|---|---|
| **SUNTECK TRANSPORT CO., LLC and BROKER HOLDINGS COMPANY, LLC,** § § § | **Civil Action No. 1:23-CV-142-SA-DAS** |
| Plaintiffs, § § | |
| v. § § | |
| **ANNA REYNOLDS and TRANSPORT ON THE GO, LLC,** § § § § | |
| Defendants. § | |

**AGREED PERMANENT INJUNCTION
AND ORDER OF DISMISSAL WITH PREJUDICE**

Having engaged in settlement negotiations, Plaintiffs Sunteck Transport Company, LLC and Broker Holdings Company, LLC, on the one hand, and Defendants Anna Reynolds and Transport on the Go, on the other hand, have reached a settlement agreement, leaving no issues to be tried or determined by this Court. Based on the Parties' agreement and consent, this Court ORDERS as follows:

1. **Definitions.**

    A. The term "**Agreed Injunction**" shall mean and refer to this Agreed Permanent Injunction and Order of Dismissal with Prejudice.

    B. The term "**BHC**" shall mean and refer to Broker Holdings Company, LLC, and shall include its parent, subsidiary, affiliate, predecessor, and/or successor companies, if any, as well as its officers, directors, shareholders, general or limited partners, members, owners, employees, contractors, attorneys, and/or agents.

    C. The term "**Defendants**" shall mean and refer to Reynolds and TOTG.

D. The term "**Effective Date**" shall mean June 7, 2024.

E. The term "**Plaintiffs**" shall mean BHC and Sunteck.

F. The term "**Plaintiffs' Confidential Information**" means any and all information of Sunteck/BHC (i) that is or was designated and maintained as "confidential" by Sunteck/BHC, (ii) that federal or state law, or Sunteck/BHC has indicated through its policies, procedures, or other instructions, should not be and has not been disclosed to anyone outside of Sunteck/BHC except through controlled means, and/or (iii) that is or should be reasonably understood by the Parties to be confidential and has been maintained as confidential by Sunteck/BHC. Sunteck/BHC Confidential Information includes, by way of example and not limitation, the following information as such information existed during Reynolds' employment and as of the termination of such employment: (i) the identities and contact information of Sunteck/BHC's customers or clients as compiled in MODE/BHC's database; (ii) the volume of business and the nature of the business relationship between MODE/BHC and its customers or clients; (iii) Sunteck/BHC's billing practices; (iv) the pricing of Sunteck/BHC's products and services, including any deviations from its standard pricing; (v) margin information, carrier data, lane information, load data, customer shipping or other logistics requirements, and customer credit volumes; (vi) freight and brokerage rates, amounts received for brokerage services, amounts of freight charges collected, and freight volume requirements; (vii) information regarding Sunteck/BHC's employees, including their identities, skills, talents, knowledge, experience, compensation, and preferences; (vii) Sunteck/BHC's business plans and strategies, marketing and sales plans and strategies, revenue, expense and profit projections, industry analyses, and any proposed or actual implemented technology changes; and (viii) information about Sunteck/BHC's financial results and business condition.  Confidential Information also includes any information received by

Sunteck/BHC from any person or entity with any understanding, express or implied, that it will not be disclosed. Notwithstanding the foregoing, Plaintiffs' Confidential Information *shall not* include information that is publicly available or that is properly obtained by a Party from third party source under no obligation of confidentiality.

G. The term "**Parties**" shall collectively mean and refer to Sunteck, BHC, TOTG, and Reynolds.

H. The term "**Reynolds**" shall mean and refer to Anna Reynolds, who, at the time of the execution of this Agreement, resides at 8033 Irwin Loop, Daphne, AL 36526.

I. The term "**Settlement And Release Agreement**" shall mean and refer to the written agreement agreed to and executed by the Parties settling this lawsuit, *i.e.*, Case Civil Action No. 1:23-CV-142-SA-DAS, pending in the United States District Court for the Northern District of Mississippi.

J. The term "**Sunteck**" shall mean and refer to Plaintiff Sunteck Transportation Co, LLC, and shall include its parent, subsidiary, affiliate, predecessor, and/or successor companies, if any (including, without limitation Sunteck TTS, LLC, MODE Transportation, LLC, MODE Global, and Avenger Logistics), as well as its officers, directors, shareholders, general or limited partners, members, owners, employees, contractors, attorneys, and/or agents.

K. The term "**TOTG**" shall mean and refer to Transport on the Go, LLC, and shall include its parent, subsidiary, affiliate, predecessor, and/or successor companies, if any, as well as its officers, directors, shareholders, general or limited partners, members, owners, employees, contractors, attorneys, and/or agents.

**2. Preliminary Stipulations.**

A. This Agreed Injunction is being entered pursuant to the agreements and stipulations

of the Parties. The Parties stipulate, and the Court finds based on such stipulation, that this Court has jurisdiction over the subject matter of this action and over the Parties for purposes of this Agreed Injunction, that venue is proper, and that all substantive and procedural prerequisites to the entry of this Agreed Injunction, as well as its enforceability under and/or its compliance with the Federal Rules of Civil Procedure, have been met and/or are hereby waived by the Parties.

   B.  Except as to such findings and conclusions that are expressly provided herein, the Parties stipulate that this Agreed Injunction may be entered without Findings of Fact and Conclusions of Law and waive all rights to request such findings or conclusions. All findings and orders contained herein have been stipulated and agreed to by the Parties.

   C.  The Parties stipulate and agree that the definition of "Plaintiffs' Confidential Information" herein meets all specificity requirements of Federal Rule of Civil Procedure 65, *et seq*.

   D.  For purposes of complying with Federal Rule of Civil Procedure 65 *et seq*., the Parties stipulate and acknowledge that, prior to the entry of this Agreed Injunction, the Parties agreed to a list containing the identities of all persons, companies and businesses that were both: (i) a client, customer or prospect of Plaintiffs, and (ii) who or which Reynolds personally solicited, contacted, communicated with, or accepted business from while she was an employee of BHC at some point during the eighteen (18) months preceding the termination of Reynolds' employment with BHC (the "**Prohibited Customer List**"). Plaintiffs and Defendants further stipulate that the contents of the Prohibited Customer List cannot be specifically enumerated in this Agreed Injunction because doing so would potentially convert certain information allegedly protectable as trade secrets and/or confidential and proprietary information under Federal law into a public record, thereby revealing the information to the public and frustrating the purpose of this lawsuit.

Plaintiffs and Defendants further acknowledge and agree that the Prohibited Customer List shall be maintained in the possession of counsel of record for Defendants, and that the contents of the Prohibited Customer List may be disclosed only to Reynolds, and that the Defendants shall keep the contents of the Prohibited Customer List strictly confidential and, further, Defendants shall use it solely for the purpose of ensuring compliance with this Agreed Injunction. Plaintiffs and Defendants hereby acknowledge that the exchange of the Prohibited Customer List as set forth in this paragraph satisfies the specificity requirements of Rule 65 and, further, Plaintiffs and Defendants waive any claim that the Agreed Injunction is unenforceable because it does not specifically enumerate the names to whom it applies. Consequently, the Court finds that the Agreed Injunction satisfies the specificity requirements of Rule 65.

    E.    Without making any admission as to the claims and defenses set forth in the Parties' respective pleadings, the Parties have compromised and settled all claims alleged in the Lawsuit and have entered into the Settlement and Release Agreement to resolve all disputes and demands by and among them in the Lawsuit, including those matters that were or might have been asserted in the Lawsuit. As part of and for the sole purpose of settling the Lawsuit, the Parties agree to the findings set forth below in Section 3.

3.    **Findings**.

    A.    The Court finds that sufficient notice has been provided to Defendants.

    B.    The Court finds that it has sufficient subject matter and personal jurisdiction over this matter and the Parties.

    C.    The Court finds that Reynolds was employed by BHC as an Account Executive from on or about Sept. 17, 2018 until on or about July 27, 2023. The Court further finds that as a

condition of her employment with BHC, Reynolds executed a Sales Agent Agreement ("**Sales Agent Agreement**"), to which Mississippi law applies.

  D. The Court finds that Section 2 of the Sales Agent Agreement contains a non-disclosure provision that reads as follows:

> Employee agrees not to disclose to any unauthorized person, firm, corporation or other entity, and Employee further agrees not to use for his/her own benefit or for the benefit of any unauthorized person, firm, corporation or other entity of the Employer's trade secrets or any other information which is proprietary and confidential. Trade secrets or confidential proprietary information shall mean all such information and shall not be limited to the information which has not been made available by Employer to the public. Trade secrets or confidential proprietary information shall include but shall not be limited to the following: customer account information; credit histories; carrier lists; carrier account information; price schedules; job descriptions; cost data; vendor lists; contracts; and all operational forms created by or for Employer. Employee acknowledges that the unauthorized disclosure and/or use of Employer's trade secrets or other confidential proprietary information, either during Employee's tenure of employment or its following termination, would constitute a clear threat to the business of the Employer. The provisions of this paragraph shall be enforceable by the Employer and shall without limitation survive the termination of the Employment Agreement.

  E. The Court further finds that Section 3 of the Sales Agent Agreement contains a covenant not to compete that reads as follows:

> Employee agrees that, except with written permission from Employer, he/she will not, during his/her employment by Employer and for a period of (2) years after the end of his/her employment by Employer, perform any services regarding the brokerage of transportation services, directly or indirectly, either as owner, partner, joint venture, shareholder, employee, or consultant, for any person or business entity (or a subsidiary thereof) within a two hundred and fifty mile radius of Tupelo, MS. Employee acknowledges that such period is a reasonable period of time and that the geographical area set forth in the foregoing paragraph is reasonable. Employee represents and admits that in the event of termination of his/her experience capabilities are such that enforcement, of a remedy by way of injunction will not prevent him/her from earning a livelihood.

F. The Court finds that the non-disclosure and non-competition provisions contained in the Sales Agent Agreement are valid provisions that are reasonable and may be enforced to protect BHC's legitimate business interests and Plaintiffs' Confidential Information. The Court further finds that Reynolds acquired Plaintiffs' Confidential Information in the course and scope of her employment with BHC that, if used or disclosed without Plaintiffs' authorization and in a manner inconsistent with Plaintiffs' rights therein, has the potential to damage Plaintiffs and to provide Plaintiffs' competitors with the ability to damage Plaintiffs' respective customer relationships and business operations.

G. The Court further finds that, on or about Jan. 23, 2024, Plaintiffs filed their First Amended Complaint against Defendant (the "**Complaint**"). Based upon the pleadings and the facts before the Court, and for the sole purpose of the compromise between the Parties, the Court finds that Plaintiffs have satisfied the elements necessary for the entry of this Agreed Injunction.

**4. Injunctive Relief.**

The Court is of the opinion and finds that this Agreed Injunction should be, and hereby is, rendered and entered. It is, therefore,

A. **ORDERED** that, Defendants are permanently enjoined from possessing, using, disclosing, or otherwise misappropriating Plaintiffs' Confidential Information. It is further,

B. **ORDERED** that, within thirty (30) calendar days of entry of this Order, Defendants shall confirm in writing to Plaintiffs that each of them have dispossessed themselves of any of Plaintiffs' Confidential Information and are no longer in possession, custody, or control of any Plaintiffs' Confidential Information. Nothing in this paragraph 4(B) shall be read to affect an attorney's retention of client files for purposes of mitigating potential Errors and Omissions claims, or to comply with the applicable rules of professional conduct. It is further,

      **C.**    **ORDERED** that, for a period of nine (9) months from the Effective Date, Defendants shall not, directly or indirectly, call upon for business purposes, accept or initiate business related communications from/to, solicit, take orders from, do business with, accept business from, or otherwise provide transportation/freight brokerage services to (collectively these activities may be referred to as "Solicit" or "Soliciting") any persons or entities set forth on the Prohibited Customer List; *provided, however*, (1) Defendants may solicit or accept business from Customer "A" (as defined in the Prohibited Customer List) beginning six (6) months from the Effective Date; (2) Defendants may, at any time, solicit or accept business from Customer "A" with respect to the following shipping lanes only: (i) Lane 1 (as defined in the Prohibited Customer List); and (ii) Lane 2 (as defined in the Prohibited Customer List); and (3) Defendants may solicit or accept business from Customer "B" beginning six (6) months from the Effective Date; and and (4) Defendants may, at any time, solicit or accept business from Customer "B" with respect to the following shipping lanes only: (i) Lane 1 (as defined in the Prohibited Customer List); and (ii) Lane 2 (as defined in the Prohibited Customer List). It is further,

      **D.**    **ORDERED** that, for a period of twelve (12) months from June 30, 2024, Defendants shall not solicit any employees, agents, or contractors of BHC or Sunteck ("**Personnel**"), or cause or attempt to cause any Personnel to alter, modify, or end their employment/business relationship with Sunteck or BHC. This restriction will apply to Personnel who are current Personnel of Sunteck and/or BHC (during the life of the restriction) and individuals who were Personnel of Sunteck and/or BHC within the preceding 6 months of any solicitation.

5. **Bond.**

The Parties stipulate that no bond shall be required in connection with the entry of this Agreed Injunction, and that this Agreed Injunction shall have the full force and effect as if a bond had been posted.

6. **Retention of Jurisdiction.**

With the entry of this Agreed Permanent Injunction and Order, this Lawsuit is hereby dismissed with prejudice, with each party to bear its own costs and fees, including attorney's fees; *provided, however*, that the Court retains jurisdiction over this matter to enforce the terms of this Agreed Injunction and the "Settlement and Release Agreement" agreed to by the parties, if necessary. In the event that any part of this Agreed Injunction or the Settlement and Release Agreement is violated by any person or company bound to it, the aggrieved party may move to reopen this matter and apply for sanctions and such other relief as may be appropriate.

SIGNED this the 12th day of February, 2025.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE